## Commonwealth v. Seeherman et al.

*Charles J. Margiotti,* Attorney General, and *John Y. Scott,* Deputy Attorney General, for Commonwealth.

*William S. Bailey,* for surety.

WICKERSHAM, J., November 12, 1935.—The facts alleged in the first 10 paragraphs of defendant company's petition are admitted by the Commonwealth and are substantially as follows:

On or about June 1, 1934, the defendant, Max Seeherman, was issued a permit to engage in business as a distributor of liquid fuels under the provisions of The Liquid Fuels Tax Act of May 21, 1931, P. L. 149, 72 PS §2611(a) et seq. Under the provisions of the aforesaid Liquid Fuels Tax Act the defendant, Seeherman, filed with the Department of Revenue a bond in the sum of $5,000 dated June 1, 1934, in which he joined as principal, and the Fidelity & Casualty Company of New York as surety. On September 28, 1934, the Fidelity & Casualty Company filed its written request to be released

and discharged from liability on the aforesaid bond under section 3 (*c*) of said Liquid Fuels Tax Act and was released and discharged from any and all liability to the Commonwealth accruing on its aforesaid bond after November 30, 1934. On December 3, 1934, the permit of the defendant, Seeherman, to sell liquid fuels in Pennsylvania was revoked by the Department of Revenue of the Commonwealth of Pennsylvania, and the said Commonwealth on April 30, 1935, entered judgment upon the aforesaid bond, assessing damages at $2,478.74, this being October 1934 liquid fuels tax of $1,222.44 with interest of $61.12 to April 30, 1935, November 1934 liquid fuels tax of $1,069.71 with interest of $42.79 to April 30, 1935, and tax for three days of December 1934 of $80.28 with interest of $2.40 to April 30, 1935. The Fidelity & Casualty Company of New York paid to the Commonwealth $1,283.56 representing the October 1934 tax with interest.

It is averred in the petition that the Fidelity & Casualty Company of New York is not liable to the Commonwealth for the balance of the aforesaid judgment entered to the above term and number, which is made up of November 1934 tax and interest and three days of December 1934 tax with interest, for the reason that no liability to pay the said November and December tax accrued against it during the 60 days' period from October 1, 1934, to November 30, 1934, as said tax was not due and payable until December 31, 1934. Upon the presentation of this petition a rule was granted to show cause why the judgment should not be opened.

The answer of the Commonwealth to the rule so granted admits the first 10 paragraphs of the petition but alleges:

"All of the allegations of fact and conclusions of law contained in paragraph 11 of the petition are denied. On the contrary it is averred that during the month of November 1934, the principal, Max Seeherman . . . became liable to pay to the Commonwealth of Pennsylvania

the sum of . . . $1,069.71, on account of tax on liquid fuels sold and delivered by him during the said month . . . It is further averred that the failure of Max Seeherman to pay the aforesaid sums to the Commonwealth with interest, constitutes a default under the bond for which the surety is liable."

### Question involved

Is a surety company which was relieved from its liability on a liquid fuels tax bond on November 30, 1934, liable for any tax on liquid fuels sold by the principal in November and December 1934, which under The Liquid Fuels Tax Act of 1931 the principal was required to pay on December 31, 1934, and January 31, 1935, respectively?

### Discussion

The surety bond given by the Fidelity & Casualty Company of New York in the instant case contains the following condition:

"Now, therefore, the condition of this obligation is such, that if the above bounden Principal shall faithfully comply with the provisions of the 'Liquid Fuels Tax Act' of the Commonwealth of Pennsylvania, approved the twenty-first day of May, 1931, until the expiration date of the permit in connection with which this bond is being filed, unless before that date the Surety shall be released and discharged in the manner and to the extent prescribed by the said Act, then this obligation shall be void; otherwise it shall be and remain in full force and virtue."

Section 3(c) of The Liquid Fuels Tax Act of May 21, 1931, P. L. 149, 153, referred to in the condition of the bond from which we have quoted, provides, inter alia, as follows:

"A liquid fuels permit shall not be granted and issued until the person applying therefor has filed with the department a surety bond, payable to the Commonwealth of Pennsylvania, in such amount as shall be fixed by the department, except that the amount shall never be less

than two thousand five hundred dollars ($2,500). Every such bond shall have as surety a duly authorized surety company, to be approved by the department, conditioned that the distributor will faithfully comply with the provisions of this act during the effective period of his permit. . . .

"Any surety on a bond furnished by a distributor as provided herein shall be released and discharged from any and all liability to the Commonwealth *accruing* [italics ours] on such bond after the expiration of sixty (60) days from the date upon which such surety shall have lodged with the department a written request to be released and discharged, but this provision shall not operate to relieve, release, or discharge the surety from any liability already accrued or which shall accrue before the expiration of the sixty (60) day period."

The controversy here arises over the construction to be placed upon the words "liability already accrued or which shall accrue before the expiration of the sixty (60) day period" and the construction to be placed upon the words "accruing on such bond after the expiration of sixty (60) days."

The contention of the defendant, Fidelity & Casualty Company of New York is that because under the provisions of The Liquid Fuels Tax Act of May 21, 1931, P. L. 149, the tax due and owing from the defendant, Max Seeherman, was not payable until December 31, 1934, the liability of the surety did not accrue until after the latter date.

The defendant surety company relies as an interpretation of the words "accrue" or "accrued" upon United States v. Woodward et al., Execs., 256 U. S. 632, Duke, Supervisor of Banking, etc., v. Johnson et al., 123 Wash. 43, 211 Pac. 710, and Golden et al. v. Cervenka et al., 278 Ill. 409, 116 N. E. 273. We think, however, it is unnecessary to look to other jurisdictions for the definition of the words.

In Mifflin's Estate, 232 Pa. 25, 29, Mr. Justice Mosch-

zisker defined "accrue" as follows: "To 'accrue' is 'to come by way of increase; to be added as increase' ", referring to Webster's New International Dictionary. Also in Gross v. Partenheimer, 159 Pa. 556, it was said by Mr. Chief Justice Sterrett, p. 558:

"As generally understood, 'accruing' interest means running or accumulating interest as distinguished from accrued or matured interest. When we speak of interest which is from day to day accumulating on the principal debt, but which is not yet due and payable, we call it accruing interest. When we refer to interest heretofore payable, but still remaining unpaid, we speak of it as overdue interest, arrears of interest, or interest in arrear, just as we speak of rent in arrear. We are therefore of opinion that the words 'accruing interest' do not refer to, nor in any manner embrace any part of the six months' interest which was then overdue and unpaid."

It will readily be seen that if the contention of counsel for the defendant surety company were to be adopted by this court an anomalous situation would arise. Section 3 (b) of The Liquid Fuels Tax Act provides that all permits to operate as distributors of liquid fuels shall expire on the 31st day of May next succeeding the date upon which they are issued, while section 3 (c), from which we have quoted, provides that bonds furnished by distributors shall be "conditioned that the distributor will faithfully comply with the provisions of this act during the effective period of his permit." Since the liquid fuels tax imposed and accumulating during the month of May would not be payable to the Commonwealth under the provisions of the act until June 30th, it is obvious that the construction which the defendant company advocates would create a hiatus as to the month of May and the Commonwealth would derive no protection from the distributor's bonds against defalcations with regard to tax imposed during the month of May. It is clear that this difficulty is obviated by the construction insisted upon by the Commonwealth, which is that the surety is respon-

sible to make good defalcations of the principal as to tax imposed, that is, accruing while the bond is in effect.

The defendant company's contention is, of course, that the surety is liable to pay tax to the Commonwealth during the effective period of the bond. Thus in this case the surety admits liability for October tax payable on November 30th, but denies liability for November tax payable on December 31st because the bond was canceled as of December 1st. Applying this principle to the time the bond becomes effective rather than to the time it is canceled, we would have the surety liable for tax imposed upon the distributor prior to the date upon which the bond was written because of the fact that actual payment to the Commonwealth is not required until some date after the bond was written. Most liquid fuels tax bonds are written June 1st of each year. Tax for the month of May which is imposed and which has accrued before June 1st is not payable to the Commonwealth until June 30th. Under these circumstances the surety would be liable for the May tax if the defendant company's contention be correct. This would be the logical effect if we adopt the contention of the defendant company. We cannot so construe the act.

It is a well-established principle of the law of suretyship that in the case we have before us the contract of suretyship is to be construed in the light of the statute: Tenant et al. v. Tenant, Admr., 110 Pa. 478; Jamieson v. Capron, to use, 95 Pa. 15.

Furthermore, the construction urged upon us by counsel for the defendant company overlooks the effect of the words "or which shall accrue before the expiration of the sixty (60) day period." The tax is imposed upon liquid fuels sold and delivered, or used by distributors. The point of time at which the tax attaches is the time of the sale and delivery, or use. November tax, therefore, accumulates throughout the month of November. The tax is imposed upon transactions occurring during that month on the date upon which such transactions take

place. Because of the necessity of preparing reports the distributor is not required to pay the tax so imposed upon transactions in which he has been engaged until the last day of the next succeeding month. However, the tax has certainly accrued. We are further of opinion that it accrued when the taxable transactions occurred. No other reasonable construction can be placed upon the words used by the legislature. We are of opinion, however, that the Commonwealth is not entitled to recover for the tax which accrued in the month of December. This charge certainly did not accrue during the time the bond was in force.

For the reasons above given we are of opinion that the rule to show cause in the instant case must be discharged.

And now, November 12, 1935, it is ordered, adjudged and decreed that the rule to show cause why the judgment entered against the Fidelity & Casualty Company of New York should not be opened and the said defendant let into a defense is discharged, except as to the charge of the Commonwealth for tax which accrued after November 30, 1934. The costs of these proceedings to be paid by the defendant, Fidelity & Casualty Company of New York.